# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

MANDY MARIE BRITTON, :

    Plaintiff, :

vs. : CA 16-0194-MU

NANCY A. BERRYHILL, :
Acting Commissioner of Social Security,
                                                :
    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security awarding supplemental security income ("SSI") benefits for a closed period from September 23, 2012 through October 17, 2013 but declining to award SSI beyond October 17, 2013 based upon the finding of an Administrative Law Judge ("ALJ") that Britton experienced significant medical improvement, as of October 18, 2013, sufficient to allow her to perform a limited range of sedentary work. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Doc. 22 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings."); *see also* Doc. 24 (endorsed order of reference)). Upon consideration of the administrative record,

plaintiff's brief, and the Commissioner's brief,[1] it is determined that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[2]

## I. Procedural Background

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income on September 24, 2012 and September 28, 2012, respectively, alleging disability beginning on or about August 15, 1998. (*See* Tr. 186-193.) Her claims were initially denied on December 6, 2012 (Tr. 119-130) and, following Plaintiff's request for a hearing before an Administrative Law Judge (*see* Tr. 131-132), hearings were conducted before an ALJ on December 18, 2013 (Tr. 29-65) and August 5, 2014 (Tr. 66-101). On September 16, 2014, the ALJ issued a partially favorable decision, finding claimant not disabled prior to the expiration of her insured status under the Social Security Act (that is, she was not disabled prior to September 30, 2001) and, therefore, not entitled to disability insurance benefits (Tr. 12-13) but finding that, for the period from September 23, 2012 through October 17, 2013, Britton was entitled to supplemental security income benefits because she was under a disability and unable to perform sedentary work during that period of time (Tr. 13-18). The ALJ went on to find, however, that Britton experienced medical improvement as of October 18, 2013, and that on this date her disability ended (Tr. 18-24). On October 28, 2014, the Plaintiff

---

[1] The parties waived oral argument. (*See* Doc. 23.)

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 22 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

appealed the ALJ's unfavorable decision to the Appeals Council (*see* Tr. 244-45) and, the Appeals Council denied Britton's request for review (Tr. 1-3).[3] Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Because Britton does not challenged the ALJ's finding that she was disabled, under Title XVI of the Social Security Act, for the period of September 23, 2012 through October 17, 2013,[4] and her brief cannot be read as challenging the finding that she was not disabled under Title II prior to the expiration of her insured status, that is, prior to September 30, 2001 (*see* Doc. 17, at 2-9),[5] the undersigned simply sets forth the following relevant portions of the ALJ's analysis in connection with the disputed finding that Britton was no longer disabled as of October 18, 2013 (*see generally* Tr. 18-24).

> **12. The claimant has not developed any new impairment or impairments since October 18, 2013, the date the claimant's disability ended. Thus, the claimant's current severe impairments are the same as that present from September 23, 2012 through October 17, 2013.**

---

[3] Plaintiff represented herself during all administrative proceedings. (*Compare, e.g.,* Tr. 131-32 & 244-45 *with* Tr. 162 (Britton's waiver of right to representation)).

[4] This finding by the ALJ is supported by substantial evidence. (*See, e.g.,* Tr. 264-72, 330, 344-66, 402-04, 411, 441, 451-54 & 456-67.)

[5] The Court would simply parenthetically note that the Commissioner denied Britton's application for a period of disability and disability benefits on the basis that there was "no medically determinable impairments on or before the date last insured [September 30, 2001]," (Tr. 13) and, indeed, the administrative record reveals that the earliest medical evidence dates from 2006 (*see* Tr. 258-259). In the absence of any medical evidence prior to (or even close) to the date last insured, the Court finds no error in the Commissioner's decision on Plaintiff's Title II claim. *Compare Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005) ("An individual claiming Social Security disability benefits must prove that she is disabled. . . . For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she [was] insured.") *with Adamo v. Commissioner of Social Security,* 365 Fed.Appx. 209, 212 (11th Cir. Feb. 12, 2010) ("A disability insurance claimant must prove that he was disabled on or before the last date for which he was insured.").

**13. Beginning October 18, 2013, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.994(b)(5)(i)).**

The undersigned has considered whether any of the claimant's impairments, whether singly or in combination, meet or medically equal any of the listed impairments. The undersigned concludes they do not.

Beginning October 18, 2013, the severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.08.

. . .

**14. Medical improvement occurred as of October 18, 2013, the date the claimant's disability ended (20 CFR 416.994(b)(1)(i)).**

Once the claimant was properly diagnosed as suffering from Sjogren's syndrome and began receiving treatment from rheumatology, her symptoms began to improve. No later than October 18, 2013, the claimant's symptoms improved to such an extent that her disability ended. On that date, treatment notes state the claimant was "not feeling tired or poorly". During the period of disability, this was one of the claimant's predominant complaints. The claimant also reported "no localized joint pain" and "no depression." In other words, virtually all of the claimant's disabling symptoms were much improved. The undersigned notes that this state of improvement was not a singular occurrence. The claimant's condition has remained essentially the same since October 18, 2013. On November 18, 2013, the claimant reported: "no systemic symptoms"; "no head symptoms"; "no otolaryngeal symptoms"; "no cardiovascular symptoms"; "no pulmonary symptoms"; "no gastrointestinal symptoms"; "no genitourinary symptoms"; "no endocrine symptoms"; "no musculoskeletal symptoms"; and "no skin symptoms." Two months later, the claimant presented with complaints unrelated to her previously disabling impairments. She complained of "possible" urinary tract infection and chest pain. The claimant was diagnosed as suffering from acute sinusitis and echo virus upper respiratory. Treatment notes made no mention of ongoing problems related to her severe impairments. Whereas the claimant previously required regular medical treatment, there are no treatment records after January 10, 2014. This paucity of medical treatment tends to indicate the claimant's symptoms are not as intense, persistent, frequent or limiting as they were in the past.

**15. The medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's residual functional capacity (20 CFR 416.994(b)(1)(iv)(A)).**

In comparing the claimant's residual functional capacity for the period during which she was disabled with the residual functional capacity beginning October 18, 2013, the undersigned finds that the claimant's residual functional capacity for basic work activities has increased. In particular, due to the claimant's documented reduction in pain and fatigue, the claimant's ability to remain on task is greatly improved.

**16. After careful consideration of the entire record, the undersigned finds that, beginning October 18, 2013, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant is limited to work which will only require the claimant to: occasionally lift/carry 10 pounds; stand/walk approximately 2 hours during an 8-hour workday; sit for 6 hours during an 8-hour workday, with customary breaks; never perform pushing/pulling of heavy arm, leg or foot controls; never climb, crouch, kneel, crawl or squat; frequently handle; occasionally perform fine manipulation/fingering; never perform overhead work; not have concentrated exposure to extreme temperatures; never have exposure to noxious fumes or gases. The claimant is further limited to work which will permit her to be "off task" approximately 5% of the workday (i.e. about 3-5 minutes per hour), secondary to pain, discomfort, and psychological symptoms. The claimant is further limited to work which will permit her to occasionally alternate between the sitting and standing postures, while remaining at the workstation and continuing her work.**

The claimant alleges her symptoms include: fatigue; lack of energy; diffuse joint pain (especially in the back, right knee and right ankle); dry mouth/eyes; neuropathic pain in her hands and feet; and impaired concentration, persistence or pace. The claimant alleges her symptoms limit her ability to: sit; stand; walk; lift; carry; push; pull; reach; bend; stoop; kneel; crouch; crawl; climb; finger; handle; and sustain concentration on task. The claimant alleges her symptoms are so intense, persistent and frequent that the limiting effects prevent her from performing any substantial gainful activity.

After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

In accordance with SSR 02-1p, the undersigned has considered the impact obesity has on limitation of function including the claimant's ability to perform routine movement and necessary physical activity within the work environment. The undersigned was cognizant of the fact that the combined effects of obesity with other impairments may be greater than might be expected if each impairment existed in isolation.

The undersigned will not repeat the analysis of the medical evidence discussed earlier in this decision. That earlier discussion is sufficient to establish that the claimant suffers from the severe impairments identified.

Once the claimant was properly diagnosed as suffering from Sjogren's syndrome and began receiving treatment from the rheumatology department, her symptoms began to improve. No later than October 18, 2013, the claimant's symptoms improved to such an extent that her disability ended. On that date, treatment notes state the claimant was "not feeling tired or poorly". During the period of disability, this was one of the claimant's predominant complaints. The claimant also reported "no localized joint pain" and "no depression." In other words, all of the claimant's disabling symptoms were much improved. The undersigned notes that this state of improvement was not a singular occurrence. The claimant's condition has remained essentially the same since October 18, 2013. On November 18, 2013, the claimant reported: "no systemic symptoms"; "no head symptoms"; "no otolaryngeal symptoms"; "no cardiovascular symptoms"; "no pulmonary symptoms"; "no gastrointestinal symptoms"; "no genitourinary symptoms"; "no endocrine symptoms"; "no musculoskeletal symptoms"; and "no skin symptoms." Two months later, the claimant persisted with complaints unrelated to her previously disabling impairments. She complained of "possible" urinary tract infection and chest pain. The claimant was diagnosed as suffering from acute sinusitis and echo virus upper respiratory. Treatment notes made no mention of ongoing problems related to her severe impairments. Whereas the claimant previously required regular medical treatment, there are no treatment records after January 10, 2014. This paucity of medical treatment tends to indicate the claimant's symptoms are not as intense, persistent, frequent or limiting as they were in the past. Since October 18, 2013, the claimant has not required emergent care or inpatient care of any kind.

The evidence of record includes no medical opinions related to the period beginning October 18, 2013.

As noted above, the paucity of treatment since October 18, 2013 (only three doctor's visits)[] is inconsistent with the claimant's allegations of intense, persistent, frequent and disabling symptoms. The claimant has

required no mental health treatment since October 18, 2013. This is inconsistent with any allegations of intense, persistent and limiting psychological symptoms. The claimant's admitted activities of daily living include: cooking; cleaning; vacuuming; washing dishes; shopping; playing cards and socializing with friends[,] etc. These activities of daily living are more robust than one would expect from a person suffering from the intense, persistent, and limiting symptoms alleged by the claimant. The claimant's testimony that, every other week, she is essentially unable to perform any normal activities of daily living is not consistent with her paucity of medical treatment. Additionally, the claimant acknowledges she performed some part-time work cleaning homes until February of 2014. She worked an average 20 hours per week. Although this is not substantial gainful activity, it tends to demonstrate the claimant can perform substantial gainful activity. The undersigned finds the claimant's allegations are less than fully credible.

In sum, the above residual functional capacity assessment is supported by the medical evidence of record, the medical course of treatment established by the record, the claimant's activities of daily living, and the claimant's work history.

**17.    The claimant is still unable to perform past relevant work (20 CFR 416.965).**

.   .   .

**21.    Beginning October 18, 2013, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).**

Beginning October 18, 2013, if the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.28. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent of erosion of the unskilled sedentary occupational base caused by these limitations, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity as of October 18, 2013. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative, unskilled, sedentary occupations such as: surveillance system monitor (DOT Code 379.367-010), which represents approximately 143,000 jobs in the national

economy; callout operator (DOT Code 237.367-014), which represents approximately 140,000 jobs in the national economy[;] and tube operator (DOT Code 239.687-014), which represents approximately 96,000 jobs in the national economy.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. The vocational expert noted that the Dictionary of Occupational Titles does not discuss the "sit/stand option" described in the residual functional capacity. The vocational expert testified her opinion in that regard was based on her years of experience as a vocational expert.

Based on the evidence as a whole, including the testimony of the vocational expert, the undersigned concludes that, beginning October 18, 2013, the claimant has been capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.

**22.  The claimant's disability ended October 18, 2013 (20 CFR 416.994(b)(5)(vii)).**

(Tr. 18-19, 20- 23 & 23-24 (internal citations omitted)).

## II. Standard of Review and Claims on Appeal

"To be entitled to benefits, a claimant must be disabled, meaning the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Jasper v. Colvin,* 2017 WL 655528, *2 (M.D. Fla. Jan. 31, 2017) (citing 42 U.S.C. § 1382c(a)(3)(A)), *report & recommendation adopted,* 2017 WL 638389 (M.D. Fla. Feb. 16, 2017). The Social Security Administration's regulations establish not only a five-step sequential evaluation process for determining whether a claimant is disabled, *compare* 20 C.F.R. § 416.920(a)(4)(i)-(v) (2016) *with, e.g., Watkins v. Commissioner of*

*Social Security*, 457 Fed.Appx. 868, 870 (11th Cir. Feb. 9, 2012)[6] (per curiam) (recognizing five-step sequential process "to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.") but, as well, "a sequential evaluation process to determine whether a claimant's disability continues." *Jasper, supra,* citing 20 C.F.R. § 416.994(b)(5). Stated somewhat differently, "[a]n ALJ may terminate a claimant's benefits upon finding that there has been medical improvement in the claimant's impairment or combination of impairments related to the claimant's ability to work and the claimant is now able to engage in substantial gainful activity." *Simone v. Commissioner of Social Security Admin.,* 465 Fed.Appx. 905, 907 (11th Cir. Apr. 10, 2012) (citation omitted). In cases like the instant one, in which a claimant is found disabled for only a limited period of time, the ALJ utilizes a seven-step evaluation process to determine whether SSI benefits should be terminated based on the claimant's medical improvement, 20 C.F.R. § 416.994(b)(5), *cf. Tyson v. Colvin,* 2014 WL 6476190, *4 (N.D. Fla. Nov. 19, 2014) (If the claimant is found disabled any point in the process, it must be determined if the disability continues through the date of the ALJ's decision."), as follows:

---

[6] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

(1) whether the claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;

(2) if the claimant does not have such impairment or combination of impairments, whether there has been medical improvement;

(3) if the claimant experienced medical improvement, whether such medical improvement is related to the claimant's ability to perform work, *i.e.,* whether or not there has been an increase in the RFC based on the impairment(s) that was present at the time of the most recent favorable medical determination;

(4) whether an exception applies to a finding of no medical improvement or to a finding that medical improvement was not related to the claimant's ability to work;

(5) whether the claimant has a severe impairment;

(6) if a severe impairment exists, whether the claimant can perform substantial gainful activity such that the claimant can perform his or her past relevant work;

(7) if unable to perform past relevant work, whether the claimant can perform other work[.]

*Jasper, supra,* at *2-3, citing 20 C.F.R. § 416.994(b)(5)(i)-(vii) (footnotes omitted).

A determination by the Commissioner must be upheld "'if it is supported by substantial evidence and based on proper legal standards.'" *Simone, supra,* 465 Fed.Appx. at 907, quoting *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1158 (11th Cir. 2004).[7] Substantial evidence is defined as more than a scintilla and

---

[7] This Court's review of the Commissioner's application of legal principles is plenary. *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir. 1987); *see Martz v. Commissioner, Social Security Admin.,* 649 Fed.Appx. 948, 953 (11th Cir. May 19, 2016) ("We review the ALJ's application of legal principles *de novo.*"). Indeed, it is apparent that "[t]he Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal." *Jasper, supra,* at *3, citing *Keeton v. Department of Health & Human Services,* 21 F.3d 1064, 1066 (11th Cir. 1994).

(Continued)

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed.Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)); *see also Martz, supra,* 649 Fed.Appx. at 954 ("When reviewing for substantial evidence, we may not reweigh the evidence, decide facts anew, or substitute our own judgment for the decision of the Commissioner."). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Davison,* 370 Fed.Appx. at 996 (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)); *see also Martz, supra,* 649 Fed.Appx. ay 954 (same).

On appeal to this Court, Britton asserts three grounds for reversal of the Commissioner's decision finding substantial medical improvement as of October 18, 2013: (1) the ALJ's finding of substantial medical improvement is not supported by substantial evidence; (2) the ALJ failed to consider the side effects of her medications; and (3) the ALJ failed to pose a complete and sufficient hypothetical to the vocational expert ("VE") that included all of her limitations. Because the undersigned finds that the

ALJ erred to reversal with respect to Plaintiff's first assignment of error, and also with respect to an issue raised herein *sua sponte*, the Court has no reason to address Britton's other assignments of error. *See Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims.").

Before reaching the first issue raised by the Plaintiff in her brief and specifically determining whether substantial evidence of record supports the ALJ's finding that there had been substantial improvement in Britton's medical condition as of October 18, 2013, and/or whether the ALJ conducted the proper legal analysis—which essentially involve steps 2 and 3 above—the Court need comment on the ALJ's analysis of the first step, which deals with whether claimant has an impairment or combination of impairments which meets or equals the severity of an impairment listed in the Commissioner's Listing of Impairments. In the medical improvement section of her decision, the ALJ discussed at no small length Britton's mental impairments as of October 18, 2013 and determined that the severity of those impairments "singly[,] and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.08." (Tr. 19.) The ALJ proceeded to consider whether the paragraph "B" criteria were satisfied, rating Plaintiff's restrictions/difficulties in activities of daily living, social functioning, and with regard to concentration, persistence or pace, etc. (*id.*) and specifically finding, with respect to concentration, persistence and pace, that because of Plaintiff's moderate psychological difficulties in this area "the residual functional capacity below limits the claimant to work which will permit her to be 'off task' approximately 5% of the workday, secondary to pain, discomfort, and psychological symptoms." (*Id.* at 20.) Interestingly, the ALJ

conducted a relatively detailed discussion of whether Plaintiff's mental impairments met or medically equaled 12.04 or 12.08 despite her later emphasis that Plaintiff had "required no mental health treatment since October 18, 2013." (Tr. 22.) With respect to Britton's obvious physical impairments (e.g., Sjogren's syndrome, Sjorgen's arthritis, lupus), however, the ALJ simply performed the following perfunctory and conclusory analysis: "The undersigned has considered whether any of the claimant's impairments, whether singly or in combination, meet or medically equal any of the listed impairments. The undersigned concludes they do not." (Tr. 19.) This perfunctory "analysis" creates uncertainty in the undersigned's mind regarding whether the ALJ considered the requirements of Listings 14.10 or 14.02 at the first step of the medical improvement sequential analysis (*see id.*), inasmuch as although the ALJ found Sjogren's syndrome and lupus to be severe impairments, she discussed neither Listing 14.10 (the Sjogren's syndrome listing), nor Listing 14.02 (the listing for systemic lupus erythematosus), *see, e.g., James v. Astrue,* 2013 WL 12109250, *8-10 (S.D. Tex. Apr. 8, 2013) (discussing both Listing 14.02 and 14.10),[8] and certainly did not explain what evidence reflected that Britton did not meet either listing as of October 18, 2013 (*see* Tr. 19).[9] Accordingly, this Court finds **REMAND** appropriate, it being unclear whether the ALJ applied the proper legal standards or whether her finding at step one of the "medical improvement" evaluation process is supported by substantial evidence. *Cf. Armstrong v. Commissioner of Social Security,* 546 Fed.Appx. 891, 896 (11th Cir. Dec. 3, 2013)

---

[8]     The Court notes that the ALJ's decision is dated September 16, 2014. (Tr. 24.)

[9]     To be fair, the ALJ also performed a deficient analysis of the Listings in that portion of her decision awarding a closed period of SSI benefits (*see* Tr. 13-14); however, Plaintiff does not attack that portion of the administrative decision.

(vacating and remanding case in which it was "unclear whether the ALJ applied the proper legal standards or whether her finding at step three was supported by substantial evidence[]" because the ALJ's decision did not specifically discuss the requirements of the clearly applicable Listing 14.09C).

As reflected above, Britton specifically argues in her brief that the ALJ's finding of substantial medical improvement as of October 18, 2013 is not supported by substantial evidence. Although this Court agrees with Plaintiff that this case need be remanded for further proceedings, the undersigned considers the ALJ's error to be more properly viewed as a legal error.

"Medical improvement means any decrease in the medical severity of the claimant's impairments(s) which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled." *Jasper, supra,* at *2 n.2, citing 20 C.F.R. § 416.994(b)(1)(i). "A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairments[.]" 20 C.F.R. § 416.994(b)(1)(i). The Eleventh Circuit has specifically

> held that a comparison of the original medical evidence and the new medical evidence is necessary to make a finding of improvement. To terminate benefits, the Commissioner may not focus only on current evidence of disability, but must also evaluate the medical evidence upon which the claimant was originally found to be disabled. Without a comparison of the old and new evidence, there can be no adequate finding of improvement.

*Solomon v. Commissioner, Social Security Admin.,* 532 Fed.Appx. 837, 839 (11th Cir. Aug. 5, 2013) (internal citations, quotation marks and brackets omitted).

In this case, while there can be little question but that the ALJ discussed certain medical evidence contained in the record when finding Plaintiff disabled (*see* 15-17), albeit not all relevant medical evidence of record (*compare id. with* Tr. 450-67), the medical improvement portion of the decision rests solely on the medical records generated after October 18, 2013 and contained in one exhibit (*compare* Tr. 20 (citing solely to Exhibit 11F) *with* Tr. 22 (citing solely to Exhibit 11F)). Indeed, nowhere in the ALJ's decision is any reference made to Dr. Crisostomo Baliog's treatment records (*compare* Tr. 15-17 & 20-23 (no mention of Exhibit 13F) *with* Tr. 456-67 (Exhibit 13F consists of Dr. Baliog's treatment records)), that is, the treatment records of Britton's primary Sjogren's syndrome/Sjogren's arthritis caregiver during the period she was found disabled (*compare* Tr. 456-467 (treatment records from November 8, 2012 through September 26, 2013) *with* Tr. 18 ("**The claimant was under a disability, as defined by the Social Security Act, from September 23, 2012 through October 17, 2013[.]**")),[10] and, as aforesaid, the medical improvement discussions contain no mention of any of the original evidence upon which Plaintiff was found disabled (*see* Tr. 20 & 22). Because the ALJ failed to compare the old and new evidence, the finding of improvement is inadequate. *See Solomon, supra,* 532 Fed.Appx. at 839 ("Without a comparison of the old and new evidence, there can be no adequate finding of improvement."). Therefore, the Commissioner's decision must "be reversed and

---

[10] Plaintiff's last visit to Dr. Baliog on September 26, 2013 (Tr. 456-458) came a mere three weeks before the date the ALJ found Plaintiff no longer under a disability (*compare id. with* Tr. 24 ("**The claimant's disability ended October 18, 2013[.]**")).

remanded for further administrative proceedings to apply the proper legal standards in determining whether Plaintiff experienced medical improvement." *Jasper, supra,* at *5.[11]

## **CONCLUSION**

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 6th day of June, 2017.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**

---

[11] Finally, the undersigned would note that the ALJ's RFC determination (Tr. 21) is internally inconsistent in that while 3 minutes of every hour of an 8-hour workday (a total of 24 minutes) constitutes 5% of a workday (that the claimant would be "off task"), 5 minutes of every hour of an 8-hour workday does not constitute 5% of a workday; rather, 5 minutes of every hour of an 8-hour workday (that is, a total of 40 minutes) constitutes over 8% of a workday. The vocational relevance of 8% of a workday versus 5% of a workday is a matter for the ALJ to consider on remand. (*Compare* Tr. 93 (hypothetical posed to the VE and relied on by the ALJ in determining Britton could perform other work in the national economy also defined 5% of the workday that the individual would be "off task" to constitute "approximately three to five minutes per hour.") *with* Tr. 97 (VE's testimony that being "off task" for 25% of the workday would eliminate all jobs identified)).